IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>       Plaintiff,<br><br>vs.<br><br>ALFRED BIGELOW, an individual, ANN ERICKSON, an individual, CRAIG GREENBERG, an individual, CATHY CARTWRIGHT, an individual, S. BRIG DUNSMORE, an individual, SHARALEE BOOTH, an individual, JAMES ALLRED, an individual, ROBERT JENSEN, an individual, MELVIN COULTER, an individual, MICHAEL ROBINSON, an individual, SUSAN FITZGERALD, an individual, TANA STONE, an individual, BRIAN MORRIS, an individual, LEE LISTON, an individual, BILLIE CASPER, an individual, MIKE HADDON, an individual, JOHN IRONS, III, an individual, DENNIS SORENSEN, an individual, CRAIG BURR, an individual, STEVE TURLEY, an individual, THOMAS PATTERSON, an individual, LORI WORTHINGTON, an individual, BONNEVILLE COMMUNITY CORRECTIONAL CENTER, THE CENTER FOR FAMILY DEVELOPMENT, UTAH DEPARTMENT OF CORRECTIONS, UTAH BOARD OF PARDONS AND PAROLE, CENTRAL UTAH CORRECTIONAL FACILITY, UTAH STATE PRISON, DOES 1-15,<br><br>      Defendants. | REPORT AND RECOMMENDATION<br><br>**FILED UNDER SEAL**<br><br>Case No. 2:19-cv-00107-DAK-CMR<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

This matter is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF 22; ECF 54).  Before the court are five Motions to Dismiss filed by:

      1.      Defendant Tana Stone (ECF 19);

      2.      Defendant Brian Morris (ECF 21) (Stone and Morris are collectively referred to as the "Polygraph Defendants");

      3.      Defendants Alfred Bigelow, Craig Greenberg, Cathy Cartwright,[1] Sharalee Booth, James Allred, Robert Jensen, Melvin Coulter, Michael Robinson, Lee Liston, Billie Casper, Mike Haddon, John Irons, III, Dennis Sorenson, Craig Burr, Steve Turley, Lori Worthington, Thomas Patterson,[2] Bonneville Community Correctional Center ("Bonneville"), Utah Department of Corrections, Utah Board of Pardons and Parole ("Parole Board"), Central Utah Correctional Facility, and Utah State Prison[3] (the Individual State Defendants and Institutional State Defendants are collectively referred to herein as "State Defendants") (ECF 24); and

      4.      Center for Family Development, Ann Erickson, S. Brig Dunsmore and Susan Fitzgerald (collectively, the "Therapist Defendants") (ECF 58).

Having carefully considered the relevant filings, and for the reasons set out below, the undersigned RECOMMENDS the Motions to Dismiss (ECF 19, 21, 24, 43 and 58) be GRANTED IN PART and DENIED IN PART as set forth below:

---

[1] Cathy Cartwright joined the State Defendants' Motion to Dismiss (ECF 43).

[2] The foregoing individuals are referred to throughout as the "Individual State Defendants."

[3] The foregoing entities are referred to throughout as the "Institutional State Defendants."

## I.     BACKGROUND

### A.     Parole Revocation

In 2000, Plaintiff pleaded guilty to a first-degree felony sexual offense[4] and was sentenced to six years to life in prison.[5] In 2007, the Parole Board granted Plaintiff parole to Bonneville.[6] As a condition of his parole, Plaintiff was required to participate in and complete an intensive sex offender treatment program at Bonneville.[7] The sex offender program therapists inquired as to Plaintiff's complete sexual history.[8] As part of this report, the offender had to complete a "Victim Form" and a "Victim Narrative" for each of his victims.[9] Plaintiff also had to undergo polygraph tests regarding his sexual history. During two polygraph tests administered by the Polygraph Defendants in June and July of 2007, Plaintiff verbally invoked his Fifth Amendment right against self-incrimination.[10] Because Plaintiff refused to answer all questions required by the sex offender treatment program, Plaintiff was deemed to have "failed" the examination.[11]

Based on Bonneville staff reports about Plaintiff's failing to successfully complete the sex offender therapy, Plaintiff's parole was revoked, and he was returned to prison.[12] Plaintiff challenged the revocation, asserting that he possessed a Fifth Amendment right against

---

[4] Compl. ¶ 39.

[5] *Id.* ¶ 40.

[6] *Id*. ¶ 44.

[7] *Id*. ¶ 45.

[8] *Id.* ¶ 51.

[9] *Id*. ¶ 52.

[10] *Id*. ¶¶ 71–73.

[11] *Id*. ¶¶ 72–74.

[12] *Id*. ¶¶ 75–78.

incriminating himself and that the State was violating that right by revoking his parole.[13] The Parole Board disagreed and upheld the revocation in November 2007.[14]

The Parole Board granted parole a month later, again conditioning parole on Plaintiff successfully completing Bonneville's sex offender treatment program.[15] Plaintiff again asserted his Fifth Amendment right against self-incrimination when Bonneville therapists inquired as to his sexual history.[16] According to the December 27, 2007 notes from one Bonneville therapist, Plaintiff threatened a lawsuit if he was expected to violate his Fifth Amendment rights.[17] That same day, Plaintiff wrote a letter to the Parole Board reasserting his "legal position" regarding his "State and Federal constitutional rights against self-incrimination."[18] In late December 2007, Plaintiff's parole was again revoked.[19] In February 2008, Plaintiff challenged the revocation, again raising his rights against self-incrimination.[20]

At his April 2008 evidentiary hearing regarding the revocation, Plaintiff specifically asserted that he planned to file a lawsuit against Defendants for violating his rights.[21] The Parole Board officially revoked Plaintiff's parole in April 2008 for failing to complete Bonneville's sex offender program.[22]

---

[13] *Id*. ¶¶ 82–85.

[14] *Id*. ¶ 85.

[15] *Id*. ¶ 86.

[16] *Id*. ¶ 87.

[17] *Id*. ¶¶ 89–90.

[18] *Id*. ¶ 91.

[19] *Id*. ¶ 92.

[20] *Id*. ¶ 95.

[21] *Id*. ¶ 98.

[22] *Id*. ¶ 99.

**B.**     **Loss of Privileges for Failing to Fully Participate in Correctional Sex Offender Treatment Program**

In September 2009, Plaintiff filed a Petition for Extraordinary Relief challenging the constitutionality of the State Defendants' actions in revoking his parole for asserting his Fifth Amendment rights.[23] On December 1, 2009, Plaintiff met with a Utah Department of Corrections therapist before being accepted into the prison's sex offender treatment program.[24] At that meeting, Plaintiff informed the therapist of his pending court case in which he staked out a legal position that requiring disclosure of uncharged sexual acts violated his rights.[25] On December 9, 2009, Plaintiff again met with the therapist and was told he was not able to participate in the program because he would not complete the requirements regarding disclosure.[26] That same day, Plaintiff was placed on restrictive lockdown.[27]

On November 10, 2010, Plaintiff filed a Level I Grievance regarding the restrictive lockdown and his level reductions.[28] In that grievance, Plaintiff connected the restrictions to his asserting his Fifth Amendment rights in legal proceedings.[29] Plaintiff's grievance was denied on December 9, 2010.[30] On or about December 16, 2010, Plaintiff submitted a Level II Grievance.[31] Plaintiff received a response on December 16, 2010, denying his grievance because the privilege level reduction came from his unwillingness to follow requirements for the prison's sex offender

---

[23] *Id*. ¶ 103.

[24] *Id*. ¶ 104.

[25] *Id*. ¶¶ 104–05.

[26] *Id*. ¶¶ 105–06.

[27] *Id*. ¶ 109.

[28] *Id*. ¶ 131.

[29] *Id*.

[30] *Id*. ¶ 133–34.

[31] *Id*.

treatment program.[32] On or about December 26, 2010, Plaintiff submitted a Level III

Grievance.[33] The grievance was denied on January 25, 2011, and Plaintiff was informed that "no

further administrative review was available."[34]

On May 4, 2011, Plaintiff again sought admission to the sex offender treatment

program.[35] On June 23, 2011, he filed another Level I Grievance alleging that he was being

denied admission to the sex offender treatment program because of his legal claims and his

appeal—specifically stating that officials were "interfering with my court case."[36] He also stated

that he was being punished "because I filed a lawsuit."[37] His grievance was denied on July 21,

2011.[38] On August 15, 2011, Plaintiff filed a Level II Grievance "because he was placed on

lockdown, and could not get off lockdown, because he refused to waive his Fifth Amendment

rights and provide incriminating information in the [sex offender treatment program]."[39] On

September 9, 2011, his Level II Grievance was denied.[40] Plaintiff submitted his Level III

Grievance on September 23, 2011, which was denied on October 12, 2011.[41] The denial

informed Plaintiff that he had exhausted his administrative remedies.[42]

---

[32] *Id*. ¶ 135.

[33] *Id*. ¶ 136.

[34] *Id*. ¶ 138.

[35] *Id*. ¶ 140.

[36] *Id*. ¶ 142.

[37] *Id*. ¶¶ 142-43.

[38] *Id*. ¶ 144.

[39] *Id*. ¶ 145.

[40] *Id*. ¶ 147.

[41] *Id*. ¶¶ 148–49.

[42] *Id*. ¶ 149.

In September 2014, the Utah Supreme Court agreed to hear Plaintiff's case.[43] In November 2016, the Utah Supreme Court held that a material issue of fact existed over whether Plaintiff's parole had been threatened for refusing to answer incriminating questions as part of Bonneville's sex offender treatment program.[44]

On August 8, 2017, Plaintiff was paroled and remains free.

### C.    Claims

Plaintiff brought suit against Defendants in 2019 asserting the following nine claims:

> **1.**    First Cause of Action for violations of the Fifth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 for declaratory and injunctive relief against all Defendants arising from Plaintiff's self-incrimination;

> **2.**    Second Cause of Action for violations of the First and Fourteenth Amendments under § 1983 for declaratory and injunctive relief against the State Defendants arising from their retaliation;

> **3.**    Third Cause of Action for violations of the Fifth and Fourteenth Amendments under § 1983 for monetary damages against all Defendants arising from Plaintiff's self-incrimination;

> **4.**    Fourth Cause of Action for violations of the First and Fourteenth Amendments under § 1983 for monetary damages against the State Defendants arising from their retaliation;

---

[43] *Id.* ¶ 152.

[44] *Id.* ¶ 158.

**5.**     Fifth Cause of Action for intentional infliction of emotional distress

against all Defendants;

**6.**     Sixth Cause of Action for negligence against all Defendants;

**7.**     Seventh Cause of Action for violations of the Unnecessary Rigor Clause

of the Utah Constitution against the State Defendants and Polygraph Defendants;

**8.**     Eighth Cause of Action for violations of the First, Fifth, and Fourteenth

Amendments under § 1983 for monetary damages against the State Defendants

arising from Plaintiff's incarceration; and

**9.**     Ninth Cause of Action for punitive damages against certain State

Defendants and Polygraph Defendants.

## II.     LEGAL STANDARD

In reviewing a Rule 12(b)(6) motion to dismiss, a court assumes the truth of well-pleaded

facts and draws reasonable inferences in a light most favorable to the plaintiff. *See Leverington*

*v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But a claim survives only if "there

is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations

and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]hreadbare

recitals of the elements," facts "merely consistent" with liability, "labels and conclusions," or

"unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556

U.S. at 678.

## III.    DISCUSSION

### A.    Clarification of Record

This matter came before the court at a hearing on February 7, 2020 (ECF 74). Pursuant to the parties' statements at the hearing, and for purposes of clarity of the record, the court rules as follows:

#### 1.    State Defendant Melvin Coulter

State Defendants filed a Suggestion of Death pursuant to Rule 25(a) regarding Melvin Coulter ("Coulter") (ECF 25), indicating that Coulter died on January 28, 2017. At the hearing, in light of this information, Plaintiff's counsel agreed to dismiss Defendant Coulter. Accordingly, Defendant Coulter is hereby dismissed with prejudice.

#### 2.    State Defendant Lori Worthington

Pursuant to Federal Rule of Civil Procedure 25(b), State Defendants filed a Suggestion of Mental Incapacity regarding Defendant Lori Worthington ("Worthington") (ECF 26), indicating that Worthington suffered a stroke several years ago that left her mentally incapacitated. After the hearing, Plaintiff filed a Motion to Request Supporting Documentation re Lori Worthington (ECF 76), to which the State Defendants did not respond.  Accordingly, the claims against Defendant Worthington remain intact, unless dismissed with the other State Defendants, as discussed *infra*.

#### 3.    The State Defendants in Their Official Capacity

Through his Third, Fourth and Eighth Causes of Action, Plaintiff seeks monetary damages under 42 U.S.C. § 1983 against the State Defendants, in both their official and individual capacities. Plaintiff alleges that the State Defendants were persons acting under color of state law when Plaintiff's rights were allegedly violated and are therefore liable under § 1983.

Compl. ¶¶ 3–30. The State Defendants contend that in their institutional and official capacities, they are not "persons" for § 1983 purposes and therefore cannot be sued for monetary damages. Plaintiff did not respond to this argument in his Opposition Memorandum.

Section 1983 provides a remedy against "persons" who violate federal rights while "acting under color of state law." 42 U.S.C. § 1983; *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995). To be a proper defendant for a damages action under § 1983, the defendant must be a "person" as that term has been interpreted by federal case law. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). "Neither the state, nor a governmental entity that is an arm of the state, nor a state official who acts in his or her official capacity, is a 'person' within the meaning of § 1983." *Harris v. Champion*, 51 F.3d 901, 905–06 (10th Cir. 1995) (superseded on other grounds by statute); *see also Will*, 491 U.S. at 71.

The Institutional State Defendants are all governmental entities and are therefore not "persons" subject to suit under the federal civil rights statute. *See, e.g.*, *Dickson v. N.M. Behavior Health Inst.*, No. 08-2089, 335 F. App'x 729, 731 (10th Cir. June 23, 2009) (affirming dismissal of state agency, with prejudice, because the agency was not a "person" under § 1983); *Coleman v. Utah State Charter Sch. Bd.*, No. 2:10-cv-1186-TC, 2011 WL 4527421, at *2–3 (D. Utah Sept. 28, 2011) (dismissing § 1983 claims against the Utah State Charter School Board, with prejudice, because the board is not a "person" for the purpose of § 1983). The Individual State Defendants sued in their official capacity are likewise not "persons" for purposes of § 1983. *See Harris*, 51 F.3d at 905–906; *see also Will*, 491 U.S. at 71 (finding that "a suit against a state official in his or her official capacity is not a suit against the official but rather against the official's office"). Accordingly, Plaintiff's Third, Fourth and Eighth Causes of Action against the State Defendants in their official capacity are hereby dismissed with prejudice.

### 4.     The Therapist Defendants in Their Official Capacity

At the February 7, 2020 hearing, Plaintiff clarified which causes of action he was

pursuing against the Therapist Defendants. Plaintiff informed the court that he is only pursuing

the First, Third, Fifth, and Sixth Causes of Action against the Therapist Defendants.

Accordingly, the Second, Fourth, Seventh, Eighth, and Ninth Causes of Action are hereby

dismissed with prejudice against the Therapist Defendants.

Plaintiff's Third Cause of Action seeks monetary damages for alleged § 1983 violations

by the Therapist Defendants in their official and individual capacities. Plaintiff has alleged that

the Center for Family Development "for all intents and purposes . . .  effectively became a state

actor in providing [sex offender treatment program] services to parolees, including Plaintiff."

Compl. ¶ 7. Similarly, Plaintiff asserts that the remaining Therapist Defendants—Ann Erickson,

S. Brig Dunsmore and Susan Fitzgerald—at all relevant times, "acted under color of state law."

*Id.* ¶¶ 9, 12, 30. As discussed *supra*, to be a proper defendant for a damages action under § 1983,

the defendant must be a "person" as that term has been interpreted by federal case law. *Will*, 491

U.S. at 71. And federal law has clearly determined that governmental entities or state actors

acting in an official capacity are not "persons" within the meaning of § 1983. *See Harris*, 51 F.3d

at 905–06. Accordingly, Plaintiff's Third Cause of Action against the Therapist Defendants

acting in their official capacity is dismissed with prejudice.

### 5.     The Polygraph Defendants in Their Official Capacity

At the February 7, 2020 hearing, Plaintiff also clarified which causes of action are alleged

against the Polygraph Defendants. Plaintiff confirmed that he is pursuing the First, Third, Fifth,

Sixth, Seventh, and Ninth Causes of Action against the Polygraph Defendants. Accordingly,

Plaintiff's Second, Fourth and Eighth Causes of Action are dismissed with prejudice against the Polygraph Defendants.

Regarding Plaintiff's Third Cause of Action, Plaintiff's claim against the Polygraph Defendants in their official capacity is barred because they are not "persons" as defined by federal law. *See Will*, 491 U.S. at 71; *Harris*, 51 F.3d at 905–06. Accordingly, Plaintiff's Third Cause of Action against the Polygraph Defendants acting in their official capacity is dismissed with prejudice.

### B. State Defendants Burr, Haddon, Patterson, Sorensen, Bigelow and Turley

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand "detailed factual allegations," a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 557).

Instead, to survive a motion to dismiss, a plaintiff must offer sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, allowing a court to draw the reasonable inference that the defendant is liable. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Furthermore, a defendant in a § 1983 action can only be liable for his own conduct and therefore the wrongful acts of subordinates cannot sustain claims against superiors. *Iqbal*, 556 U.S. at 676.

Plaintiff included in his Complaint six Individual State Defendants against whom he makes no factual allegations. State Defendants Burr, Haddon, Patterson, Sorenson, Bigelow, and Turley appear to be sued only as purported policymakers within the Utah Department of Corrections and/or supervisors of others whose actions Plaintiff objects to. Plaintiff does not allege any individual conduct by these six State Defendants that would give rise to liability or that would support a claim against them. As such, the court must dismiss without prejudice the six State Defendants Burr, Haddon, Patterson, Sorensen, Bigelow, and Turley from the lawsuit. As the case continues and discovery occurs, should Plaintiff discover more facts tying any of these Defendants to any alleged wrongdoing, Plaintiff may move to amend his Complaint. Until that time, the court dismisses all claims against Defendants Burr, Haddon, Patterson, Sorensen, Bigelow, and Turley without prejudice.

### C.    Statute of Limitations

The dispositive issue before the court in the Motions to Dismiss is whether the statute of limitations bars Plaintiff's claims. The parties agree that Plaintiff's claims must have been brought within four years from the date of accrual. *See Arnold v. Duchesne Cty.*, 26 F.3d 982, 985 (10th Cir. 1994) (holding that Utah's four-year residual statute of limitation governs § 1983 actions). The parties dispute, however, when that accrual date occurred. Plaintiff argues that his claims accrued in August 2017 when his parole was reinstated, and he was released from jail. Defendants, by contrast, argue that accrual began when Plaintiff's parole was first revoked in 2007. This question turns on whether the delayed accrual exception of *Heck v. Humphrey*, 512 U.S. 477 (1994), applies to each cause of action.

13

1.      ***Heck v. Humphrey* and Its Progeny**

Under the standard common law principle, a cause of action accrues "when the plaintiff

has a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192,

201 (1997)). Specifically, a cause of action under § 1983 accrues when "the plaintiff can file suit

and obtain relief." *Bay Area Laundry*, 522 U.S. at 201. The statute's running commences "when

the wrongful act or omission results in damages." *Wallace*, 549 U.S. at 391 (quoting 1 C.

Corman, *Limitation of Actions* § 7.4.1 (1991)). In short, the "action accrues even though the full

extent of the injury is not then known or predictable." *Id.* (quoting 1 C. Corman, *Limitation of

Actions* § 7.4.1). "Were it otherwise, the statute would begin to run only after a plaintiff became

satisfied that he had been harmed enough." *Id.* Courts employ this common law tenet to claims

arising under § 1983. *See id.*

Plaintiff seeks to invoke an exception to this standard approach, citing *Heck v.

Humphrey*, 512 U.S. at 477, in which the Supreme Court indicated that an inmate cannot use

§ 1983 to wage a collateral attack on his conviction or sentence. If his claim collaterally attacks

his conviction or sentence, the action may not proceed. The *Heck* doctrine "avoids allowing

collateral attacks on criminal judgments through civil litigation." *McDonough v. Smith*, 139 S.Ct.

2149, 2157 (2019).

*Heck* involved an inmate's claim that prosecutors and police destroyed exculpatory

evidence, which led to his conviction. Because the claim lacked direct textual footing in the

Constitution, the Court looked to the most analogous common law tort to determine the elements

of the claim. The Court likened the inmate's assertions to that of a malicious prosecution claim,

which, under the common law, requires a plaintiff to show "termination of the prior criminal

proceeding in favor of the accused." *Heck*, 512 U.S. at 485. The Court concluded that because an element of malicious prosecution includes the favorable termination of criminal proceedings, a successful § 1983 action in that case would amount to a collateral attack on the criminal proceedings themselves. *Id*. Accordingly, the inmate's cause of action would not accrue until a favorable termination had occurred. *Id*. "But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id*. at 487.

The Court has since refined its holding in *Heck*, making clear that the § 1983 limitation arises only when the civil suit would constitute a collateral attack on the conviction or sentence. *See, e.g.*, *Wallace*, 549 U.S. at 393, 397 (rejecting application of *Heck* exception to petitioner's claim finding that the statute of limitations of a § 1983 claim for false arrest begins to run at the time the claimant becomes detained pursuant to legal process); *Wilkinson v. Dotson*, 544 U.S. 74, 78, 82 (2005) (finding that *Heck* did not apply to bar inmates' claim challenging the constitutionality of "state procedures used to deny parole eligibility"). In other words, an inmate may bring a § 1983 action challenging the constitutionality of proceedings so as long as success on the claim will not necessarily result in the inmate's "immediate release from prison or the shortening of his term of confinement." *Wilkinson*, 544 U.S. at 79 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 482 (1973)).

Based on the *Heck* doctrine, Plaintiff argues that if he had brought any § 1983 claim against Defendants before his parole was reinstated in August 2017, it would have been a collateral attack on his conviction and thus barred by *Heck*. Plaintiff therefore argues that his causes of action are timely because he brought them within the four-year statute of limitations

provision from when he received a favorable outcome of his sentence, namely his August 2017 reinstatement of parole. Defendants argue that Plaintiff's § 1983 claims are not collaterally attacking Plaintiff's conviction and therefore should have been brought no later than in 2011, when Plaintiff first exhausted his administrative remedies in pursuing a parole revocation. Whether or not the *Heck* delayed-accrual doctrine applies to Plaintiff's claims turns on the type of claim brought. Accordingly, the court will examine each cause of action in turn.

### 2.       Statute of Limitations and Plaintiff's First and Third Causes of Action

Through his First and Third Causes of Action, Plaintiff seeks declaratory, injunctive, and monetary relief against all remaining Defendants in both their official and individual capacities for alleged violations of the Fifth and Fourteenth Amendments. Plaintiff alleges that Defendants had "a policy, pattern, and/or practice of requiring parolees to disclose incriminatory information concerning unreported sexual offenses as part of the [sex offender treatment program]." Compl. ¶ 175. In essence, Plaintiff alleges that Defendants violated his Fifth Amendment right against self-incrimination by forcing him to reveal his entire sexual history in order to successfully complete the sex offender treatment program. Plaintiff asks the court to enter an order "(1) that asking such questions under threat of parole revocation violates the Fifth and Fourteenth Amendments of the United States Constitution, and (2) that Defendants violated Plaintiff's constitutional rights by revoking his parole for refusing to answer such questions." Compl. ¶ 178. Plaintiff alleges these violations first occurred in 2007 and continued until Plaintiff received a favorable termination of his parole revocation in 2017.

Plaintiff's underlying habeas petition also alleges that his Fifth Amendment rights were violated because he was required to give self-incriminating evidence about his sexual history in order to successfully complete the sex offender treatment program. Compl., Ex. 19. In other

words, Plaintiff's § 1983 claims regarding the Fifth Amendment allege the same violative conduct as that addressed in the habeas petition. Based on these duplicative allegations, it is impossible for the court to view Plaintiff's § 1983 claims as anything but a collateral attack on his underlying revocation of parole. The habeas petition and the § 1983 claims address the same conduct, parties, and facts. Because Plaintiff's § 1983 claim collaterally attacks the underlying parole revocation, per *Heck*, Plaintiff was precluded from bringing his claims until a favorable resolution of the underlying lawsuit. That did not occur until August of 2017 when Plaintiff's parole was reinstated, and he was freed from prison. Plaintiff then had four years by which to bring his claims. He brought the present causes of action in February 2019, well within the time-period required by law. Accordingly, Plaintiff's First and Third Causes of Action are not time-barred and may proceed, if not otherwise limited, as discussed *infra*.

### 3.     Statute of Limitations and Plaintiff's Second and Fourth Causes of Action

By contrast, Plaintiff's Second and Fourth Causes of Action allege that Defendants retaliated against him for filing an extraordinary relief petition in state court. Compl. ¶¶ 182, 201. Contrary to his Fifth Amendment claims, these First Amendment retaliation allegations differ from the underlying habeas petition. The allegations speak of retaliation and loss of privileges due to filing a habeas petition rather than the invalidity of the underlying conviction itself. This difference is the determinative factor under the *Heck* delayed accrual doctrine. The court concludes that Plaintiff's retaliation claims alleged in his Second and Fourth Causes of Action do not collaterally attack his underlying conviction and thus accrued at the time Plaintiff was first placed on restricted lockdown on or about December 9, 2009. Compl. ¶ 109. Plaintiff thus had four years from that date to bring his claims. Plaintiff did not file the present action until February 2019, more than nine years after the date of accrual. Accordingly, Plaintiff's Second

and Fourth Causes of Action are untimely and dismissed with prejudice against all remaining Defendants.

> **4.      The Statute of Limitations and Plaintiff's State-Law Claims: Fifth, Sixth and Seventh Causes of Action**

Plaintiff has asserted the following three state-law based claims against Defendants: (1) intentional infliction of emotional distress, (2) negligence, and (3) violation of the Utah Constitution's Unnecessary Rigor Clause. Barring some exception to the statute of limitations provision, each cause of action has a four-year statute of limitations from its date of accrual. *See* Utah Code Ann. § 78B-2-307(3). "Under Utah law, the statute of limitations begins to run when the cause of action accrues." *Retherford v. AT &T Commc'ns of Mt. States, Inc.*, 844 P.2d 949, 975 (Utah 1992). "A tort cause of action accrues when all its elements come into being and the claim is actionable." *Id.*

> **a.   Intentional Infliction of Emotional Distress**

To sustain a claim for intentional infliction of emotional distress, Plaintiff must show that (1) Defendants' conduct was outrageous and intolerable in that it offended against the generally accepted standards of decency and morality; (2) Defendants intended to cause, or acted in reckless disregard of the likelihood of causing emotional distress; (3) Plaintiff suffered severe emotional distress; and (4) the conduct proximately caused Plaintiff's emotional distress. *Id.* at 970–71. Plaintiff's allegations regarding emotional distress demonstrate that the conduct he focuses on occurred between 2007–2011. Specifically, Plaintiff alleges:

> Defendants intentionally inflicted emotional distress upon Plaintiff by (a) wrongfully revoking his parole, (2) wrongfully declining to permit him to participate in the [sex offender treatment program], (3) wrongfully lowering his prison privileges because he filed a lawsuit to vindicate his constitutional rights, (4) wrongfully declining to permit him to participate in the [sex offender treatment program] in prison, and (5) wrongfully placing Plaintiff in lockdown because he filed a lawsuit to vindicate his constitutional rights, which meant he

was generally locked in his cell (often with nobody else or with a troubled
cellmate) for 19 to 23 hours per day.

Compl. ¶ 210.

Each of these events occurred for the first time between 2007–2011. Thus, at most,

Plaintiff needed to file his intentional infliction of emotional distress claim by 2015, more than

four years prior to when he actually filed his Complaint. Plaintiff's Fifth Cause of Action for

intentional infliction of emotional distress is untimely and is therefore dismissed with prejudice.

### b. Negligence

A negligence cause of action requires a plaintiff to prove "(1) that the defendant owed the

plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach was the

proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or

damages." *Rand v. KOA Campgrounds*, 2014 UT App 246, ¶ 6, 338 P.3d 222 (quoting *Warenski*

*v. Advanced RV Supply*, 2011 UT App 197, ¶ 6, 257 P.3d 1096). Other than responding to the

Utah Governmental Immunity Act arguments, the court notes Plaintiff did not address the

Defendants' argument that the negligence claim is time barred in the opposition (ECF 48 at 16).

Regardless, the court looks to the Complaint. Except for one allegation, the breaches that

Plaintiff complains of occurred between 2007–2011 and consist of the following:

a.  Requiring Plaintiff to incriminate himself in order to complete the [sex
    offender treatment program];
b.  Disclosing, accessing and/or using Plaintiff's confidential [sex offender
    treatment program] therapy records without his consent;
c.  Misrepresenting the facts during Plaintiff's parole revocation hearings;
d.  Recommending that Plaintiff's parole be revoked based on unconstitutional
    grounds;
e.  Interfering with Plaintiff's ability to challenge his parole revocations by
    placing him on lockdown, reducing his privileges, and regularly moving and
    transferring him to other cells/facilities without a legitimate basis for doing so;

      f.    Failing to timely release Plaintiff from prison following the decision in *U.S. v. Von Behren*, 822 F.3d 1139 (2016) and Plaintiff's Utah Supreme Court case; and

      g.    Failing to timely change their policies and procedures that require [sex offender treatment program] providers and officials to demand incriminatory information from [sex offender treatment program] participants.

Compl. ¶ 219.

Aside from the allegation relating to the *U.S. v. Von Behren* and Plaintiff's Utah Supreme Court case, these alleged breaches occurred more than four years before Plaintiff brought his Complaint and are therefore untimely and barred by the statute of limitations.

Plaintiff, however, does allege one breach that is timely. Specifically, Plaintiff alleges that Defendants "[failed] to timely release plaintiff from prison following the decision in *U.S. v. Von Behren*, 822 F.3d 1139 (2016) and Plaintiff's Utah Supreme Court case." *Id*. This alleged breach occurred in November 2016 and is within the four-year statute of limitations provision. Accordingly, Plaintiff's negligence claim regarding Defendants' alleged breach of failing to timely release him in November 2016 may proceed, unless precluded by other limitations.

One such limitation applies here, thereby barring Plaintiff from bringing his negligence claim *in toto*. In short, Plaintiff's negligence claim is barred by the Utah Governmental Immunity Act ("the Act"), which provides that:

> Any person having a claim against a governmental entity, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority shall file a written notice of claim with the entity before maintaining an action, regardless of whether or not the function giving rise to the claim is characterized as governmental.

Utah Code Ann. § 63G-7-401(2).

In addition, the Act bars any action for which the Plaintiff did not file a notice of claim "within one year after the claim arises regardless of whether or not the function giving rise to the claim is characterized as governmental." Utah Code Ann. § 63G-7-402.

The Utah Supreme Court requires a plaintiff to "strictly comply" with the Act. *Wheeler v. McPherson*, 2002 UT 16, ¶ 14, 40 P.3d 632, 636. A court lacks jurisdiction over any matter for which the plaintiff did not comply with the Act. *Id.* ¶ 16. Thus, a plaintiff's failure to follow the procedures established by the Act—including the failure to file a proper notice of claim— necessitates a court's dismissing the action. *Id.*

Plaintiff filed his Notice of Claim on August 2, 2018—more than one year after the alleged violations occurred, including regarding Defendants' alleged failure to timely release Plaintiff in November 2016. Because Plaintiff failed to file a timely notice of claim relating to his negligence cause of action, his Sixth Cause of Action must be dismissed in its entirety.

### c.  Unnecessary Rigor Clause

Finally, proceeding with a private suit for constitutional tort damages, a plaintiff must establish three elements:

> First, a plaintiff must establish that he or she suffered a "flagrant" violation of his or her constitutional rights. . . . Second, a plaintiff must establish that existing remedies do not redress his or her injuries. . . . Third, a plaintiff must establish that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries.

*Dexter v. Bosko*, 2008 UT 29, ¶ 22, 184 P.3d 592, 597–98.

Here, again, Plaintiff's allegations all center on the same conduct—actions that occurred beginning in 2007–2011.  Plaintiff alleges that Defendants violated the Utah Constitution by "[p]lacing Plaintiff on lockdown and severely restricting the time he was able to spend out of his cell present an obvious and known serious risk of physical and psychological harm and was done

so without reasonable justification." Compl. ¶ 225. Plaintiff has alleged that "[his] lockdown and privilege levels had been reduced back on December 9, 2009." Compl. ¶ 115. This conduct began at least by 2009 and thus needed to be brought by 2013 to fall within the applicable statute of limitations. Plaintiff did not bring his claims until February 2019, well beyond the 2013 bar. Plaintiff's Seventh Cause of Action is therefore time-barred and dismissed with prejudice.

In sum, under each of these theories, Plaintiff's causes of action began accruing in 2007 and, at the latest, in 2011. Plaintiff could have brought a civil suit then. He was aware of that possibility, regularly mentioning it to Defendants and raising it with his attorney at the time. Compl. ¶ 98. He did not bring suit until 2019. As such, his state-law based claims are time-barred.

### d.  Application of *Heck* to State-Law Based Claims

Plaintiff asks this court to apply *Heck*'s reasoning to his state-law based claims set forth in his Fifth, Sixth, and Seventh Causes of Action—an application that heretofore has never occurred—arguing that the statute of limitations did not begin to run until Plaintiff was released from prison in August 2017. Accordingly, Plaintiff argues his state-law based claims are all timely under the governing four-year statute of limitations.

The court declines Plaintiff's invitation to extend the *Heck* doctrine to state-law claims. The principles articulated in *Heck* have no bearing on Plaintiff's state-law claims. Plaintiff's Fifth, Sixth, and Seventh Causes of Action are hereby dismissed with prejudice as untimely both with respect to the statute of limitations and the Notice of Claim provision of the Act.

### 5.  The Statute of Limitations and Plaintiff's Eighth Cause of Action

Plaintiff's Eighth Cause of Action addresses Defendants' alleged failure to timely release Plaintiff after the Utah Supreme Court decided his case and the Tenth Circuit issued *U.S. v. Von*

*Behren*, 822 F.3d 1139 (10th Cir. 2016). Compl. ¶ 230. Because the facts underlying this claim arose in November 2016, well within the statute of limitations provision governing Plaintiff's action, barring some other limitation, as discussed *infra*, Plaintiff's claim may proceed. The statute of limitations does not bar Plaintiff's Eighth Cause of Action.

### 6. Plaintiffs' Arguments Regarding Estoppel, Continuing Violation and Equitable Tolling Do Not Save His Claims

Plaintiff has advanced three theories in an attempt to save his claims from being dismissed for untimeliness. First, he contends that the State Defendants are estopped from arguing that the statute of limitations has run because they allegedly represented that Plaintiff had a possible § 1983 claim in his underlying habeas corpus proceeding. Second, Plaintiff argues that the State Defendants were engaged in a series of continuing violations and under the continuing violation theory, the statute of limitations did not begin to run until the last tortious act. Third, Plaintiff argues for the extraordinary relief of equitable tolling. The court is unpersuaded by each of these arguments.

#### a. Estoppel

Plaintiff asserts that all Defendants are estopped from arguing that Plaintiff's claims are barred by applicable statute of limitation because "[t]he state defendants represented in their motion to dismiss Plaintiff's habeas petition, and at oral argument, that Plaintiff could file a § 1983 action as an alternative for obtaining the relief he sought in the habeas petition." Pl's Opp. Br. at 3 (ECF 57). Indeed, only two defendants—Alfred Bigelow and the Parole Board— were parties in Plaintiff's habeas petition and are therefore the only Defendants that could potentially assert this defense (ECF 53 at 6).

First, as discussed *supra*, Defendant Bigelow has been dismissed from this case pursuant to Rule 8 of the Federal Rules of Civil Procedure. Accordingly, Plaintiff's estoppel argument is moot with respect to Defendant Bigelow.

Secondly, regarding the Parole Board, the court finds that the Parole Board is not estopped from arguing a statute of limitations defense. In the habeas proceeding, counsel for the Parole Board "acknowledged that nothing about the dismissal of his claims as moot here would affect [Plaintiff's] ability to seek civil relief for damages in an appropriate proceeding." Pl's Opp. Br., Ex. B, at n.3 (ECF 48-2 at 7). Dismissing Plaintiff's habeas petition did not affect Plaintiff's statute of limitation claims, one way or the other. If Plaintiff would have had a valid cause of action, dismissing his habeas petition would not change that. If Plaintiff would not have had a valid cause of action, dismissing his habeas petition would not change that either. In other words, the viability of Plaintiff's § 1983 claim did not hinge on what occurred in the habeas petition. The Parole Board is not estopped from arguing a statute of limitations defense.

### b. Continuing Violation Theory

The continuing violation theory "is a creation of federal law that arose in Title VII cases. This theory recognizes that certain violations are continuing in nature and provides that a claim asserting such a violation is timely if administrative charges are filed within the period applicable to the last act in the continuing series." *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997). Importantly, the continuing violation doctrine is inapplicable when the injury is "definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *Matson v. Burlington Northern Santa Fe R.R.*, 240 F.3d 1233, 1237 (10th Cir. 2001) (quoting *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996)).

The Tenth Circuit has never ruled on whether the doctrine applies to § 1983 claims, and in fact the State Defendants point to Tenth Circuit precedent where it was not applied to a claim for discrimination under 42 U.S.C. § 1981. *See Thomas v. Denny's Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997) (explaining the "continuing violation theory is simply not applicable").[45] The court therefore declines Plaintiff's invitation to attempt to extend the doctrine now.

### c. Equitable Tolling

Plaintiff also asserts that the doctrine of equitable tolling should apply to save his claims. The doctrine of equitable tolling is one of "exceptional circumstances," and the Utah Supreme Court has urged courts to be cautious in employing it. *Beaver Cty. v. Prop. Tax Div. of Utah State Tax Comm'n*, 2006 UT 6, ¶¶ 25, 32, 128 P.3d 1187. Furthermore, under Utah law, "the party seeking equitable tolling must first show that he was indeed disabled . . . from protecting his claim. We have heretofore only found disability sufficient to warrant equitable tolling through application of the discovery rule." *Garza v. Burnett*, 2013 UT 66, ¶ 11, 321 P.3d 1104. Plaintiff does not base his request for equitable tolling on a failure to discover the alleged violations. Indeed, per Plaintiff's Complaint, he was well aware of any alleged violation throughout his parole revocation, regularly informing officials that he intended to bring suit. The court finds that the instant case is not one of "exceptional circumstances" and declines to apply the doctrine of equitable tolling.

---

[45] Plaintiff cites to *Colby v. Herrick*, 849 F.3d 1273 (10th Cir. 2017), in which the court "assume[d] the continuing violation doctrine applies in § 1983 cases." *Id.* at 1280. Defendants correctly note that the court assumed it applied only to reject its application on the ground that the plaintiff only continued to suffer *damages* after the discrete act giving rise to the claim. Similarly, as discussed previously, Plaintiff bases his state law claims on discrete acts occurring between 2007–2011, thereafter suffering alleged damages, not a continuing violation.

### D.      Remaining Causes of Action Against Remaining Defendants

Based on the above rulings regarding the statute of limitations, as well as Plaintiff's

clarification of the record dismissing certain Defendants, *see supra*, only portions of Plaintiff's

claims remain against the following Defendants:

#### 1.      First Cause of Action

Plaintiff seeks declaratory and injunctive relief against these remaining Institutional State

Defendants: the Department of Corrections; Bonneville; Central Utah Correctional Facility; Utah

State Prison; and the Parole Board, as well as against the Therapist Defendant Center for Family

Development. Plaintiff's First Cause of Action also seeks declaratory and injunctive relief

against the following remaining Defendants in both their individual and official capacity: Craig

Greenberg; Cathy Cartwright; Sharalee Booth; James Allred; Robert Jensen; Michael Robinson;

Lee Liston; John Irons, III; Billie Casper; Lori Worthington; Ann Erickson; S. Brig Dunsmore;

Susan Fitzgerald; Tana Stone; and Brian Morris. Defendants argue that Plaintiff's First Cause of

Action must be dismissed because there is no present case or controversy for declaratory relief

purposes and Plaintiff does not have standing to seek injunctive relief. The court will address

each argument in turn.

#### a.  Declaratory Relief

To obtain declaratory relief from the court, Plaintiff must establish that there is a "case of

actual controversy" on which declaratory judgment could be granted. *See, e.g.*, *Schepp v.

Fremont County, Wyo.*, 990 F.2d 1448, 1452 (10th Cir. 1990) (holding that because plaintiff

risked no real threat or likelihood of further injury in connection with his parole revocation,

Plaintiff's complaint no longer presented a "case of actual controversy" on which declaratory

judgment could be granted). "[P]ast exposure to illegal conduct does not in itself show a present

case or controversy regarding injunctive [or declaratory] relief . . . if unaccompanied by any continuing, present adverse effects." *Facio v. Jones*, 929 F.2d 541, 545 (10th Cir. 1991) (second alteration in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

Plaintiff has been paroled since August 2017. The order granting Plaintiff parole provides that the Board "will not consider it a violation of parole if [Plaintiff] refuses to answer questions in therapy or otherwise that carry the risk of incrimination." Compl. ¶ 166. Plaintiff has been paroled for nearly four years without any Fifth Amendment issue arising. As such, he cannot show any "continuing, present adverse effects," and therefore, Plaintiff lacks standing to seek declaratory relief. Plaintiff's First Cause of Action seeking declaratory relief is dismissed with prejudice against all remaining Defendants.

### b. Injunctive Relief

A plaintiff must have standing to pursue injunctive relief, requiring the plaintiff to demonstrate (1) injury; (2) causation; and (3) redressability. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). To demonstrate injury, "[t]he plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (quoting *Golden v. Zwickler*, 394 U.S. 103, 109–110 (1969)). Further, a plaintiff seeking injunctive relief must show a likelihood of future harm. *See id.* at 106.

Paroled since August 2017, without Fifth Amendment incident, Plaintiff lacks standing to pursue an injunction regarding the sex offender treatment program because he has no credible fear of injury. He makes no allegations that since his release in August 2017, he has been required to disclose incriminating information, and he does not allege any reasonable basis for

fearing constitutional violations. Because Plaintiff has not shown any reasonable basis for a fear of an "imminent" injury, Plaintiff lacks standing to seek the equitable relief he seeks. Plaintiff's First Cause of Action's claim for injunctive relief is dismissed with prejudice against all remaining Defendants.

### 2.      Third Cause of Action

As discussed *supra*, Plaintiff's Third Cause of Action against the Institutional State Defendants and the Individual State Defendants acting in their official capacity have been dismissed with prejudice. The Therapist and Polygraph Defendants acting in their official capacity have also been dismissed with prejudice. Accordingly, Plaintiff's Third Cause of Action remains only against the Individual State, Therapist and Polygraph Defendants acting in their individual capacities.

Defendants have raised the issue of qualified immunity as a defense to all remaining causes of action, including regarding Plaintiff's Third Cause of Action. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—[1] the need to hold public officials accountable when they exercise power irresponsibly and [2] the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The purpose of the doctrine is to provide government officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quoting *Ziglar v. Abbasi*,

137 S. Ct. 1843, 1866 (2017)). A court should address a claim of qualified immunity as early in the proceedings as possible. *Pearson*, 555 U.S. at 231–22.

Defendants assert that they are entitled to qualified immunity because it is well-established law that Plaintiff's parole and privileges could be revoked based on his refusal to meet the sex offender treatment program requirements. *See, e.g.*, *McKune v. Lile*, 536 U.S. 24 (2002) (holding that an inmate may be moved to a maximum security prison and have his housing and privileges levels lowered because of his unwillingness to participate in a sex offender treatment program due to fears of self-incrimination); *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002) (holding that loss of privileges and good time credits was a consequence of prisoner's inability to complete rehabilitation rather than because he refused to incriminate himself). Plaintiff, by contrast, argues that well-established law mandates that the government may not revoke probation based on the exercise of the Fifth Amendment privilege. *See, e.g., Minnesota v. Murphy*, 465 U.S. 420 (1984) (holding that state officials cannot revoke a person's probation or parole based on their exercise of the Fifth Amendment privilege).

Considering these principles, the court concludes that it is premature, absent a factual record, to grant qualified immunity on the basis of these pleadings. Resolving all reasonable inferences in Plaintiff's favor, the Complaint states a claim that Defendants violated clearly established law by revoking Plaintiff's parole because he exercised his Fifth Amendment right against self-incrimination. Notwithstanding, Defendants are not foreclosed from reasserting their entitlement to a qualified immunity defense on a motion for summary judgment should Plaintiff's allegations in the Complaint prove to be untrue. It is simply premature for the court to rule on the issue of qualified immunity and therefore declines to do so. *See* 2 James Wm. Moore, Moore's Federal Practice, § 12.34[4][b] & n.56 (3d ed. 1998) (stating that dismissal for failure to

state a claim on qualified immunity grounds is generally inappropriate because qualified immunity defense requires a factual review). Plaintiff's Third Cause of Action may proceed against the Individual State Defendants, Therapist Defendants, and Polygraph Defendants in their individual capacities.

**3.      Eighth Cause of Action**

As previously discussed, Plaintiff dismissed his Eighth Cause of Action against the Institutional State Defendants and the Individual State Defendants in their official capacity. Plaintiff also voluntarily dismissed the Eighth Cause of Action against the Therapist and Polygraph Defendants in their entirety. Thus, the Eighth Cause of Action remains solely against the Individual State Defendants in their individual capacities.

Plaintiff's Eighth Cause of Action addresses Defendants' alleged decision "to keep Plaintiff incarcerated and at reduced privilege levels because of his lawsuit challenging his parole revocation," despite "the unambiguous direction from the Utah Supreme Court and the Tenth Circuit Court of Appeals." Compl. ¶ 230. This is the sum total of Plaintiff's allegations regarding this cause of action. Plaintiff has failed to specify which Defendants were responsible for which action and when. Plaintiff's general allegation, lacking any specificity, fails to satisfy Federal Rule of Civil Procedure Rule 8's pleading standards as well as those established by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'Naked assertions' devoid of 'further factual enhancement'" are simply insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 557. Accordingly, the court must dismiss without prejudice the Eighth Cause of Action against the remaining Individual State Defendants. Plaintiff must plead more specific facts to withstand Defendants' motion to dismiss.

### 4.    Ninth Cause of Action

Outside of unidentified Defendant Does, review of the Complaint demonstrates Plaintiff has named only three Defendants in his claim for punitive damages: Defendants Robert Jensen, Craig Greenberg, and Michael Robinson. Yet at the hearing, Plaintiff clarified he intended to assert this claim against additional Defendants. Notwithstanding that intent, this cause of action suffers from pleading deficiencies. Not only is the legal basis for this cause of action unclear, Plaintiff purports to assert this cause of action against the Polygraph Defendants but does not name these defendants or include any specific allegations against them in this cause of action. Due to Plaintiff's failure to meet the pleading standards of Rule 8, the Ninth Cause of Action is also dismissed without prejudice.

### RECOMMENDATION

In summary, IT IS HEREBY RECOMMENDED that:

1. The Motions to Dismiss (ECF 19, 21, 24, 43, and 58) be DENIED IN PART as to the Third Cause of Action against the Individual State Defendants, Therapist Defendants, and Polygraph Defendants in their individual capacity;

2. The Motions to Dismiss (ECF 19, 21, 24, 43, and 58) be GRANTED IN PART and that:

    a.  Plaintiff's First, Second, Fourth, Fifth, Sixth, and Seventh Causes of Action be:

        i.  DISMISSED without prejudice against State Defendants Burr, Haddon, Patterson, Sorensen, Bigelow, and Turley in their individual capacity;

31

   ii. DISMISSED with prejudice against State Defendants Burr, Haddon, Patterson, Sorenson, Bigelow, and Turley in their official capacity; and

   iii. DISMISSED with prejudice against all remaining State Defendants, Therapist Defendants, and Polygraph Defendants in both their individual and official capacities;

 b. Plaintiff's Third Cause of Action be:

   i. DISMISSED without prejudice against State Defendants Burr, Haddon, Patterson, Sorensen, Bigelow and Turley in their individual capacity;

   ii. DISMISSED with prejudice against the Individual State Defendants, Therapist Defendants, and Polygraph Defendants in their official capacity; and

   iii. DISMISSED with prejudice against the Institutional State Defendants;

 c. Plaintiff's Eighth Cause of Action be:

   i. DISMISSED without prejudice against the Individual State Defendants in their individual capacity;

   ii. DISMISSED with prejudice against the Individual State Defendants in their official capacity;

   iii. DISMISSED with prejudice against the Institutional State Defendants; and

 d. Plaintiff's Ninth Cause of Action be DISMISSED without prejudice.

**NOTICE**

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object.  Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 14 June 2021.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah